### WILLIAM H. JONES
*vs.*
### GITLEN MOTOR SALES, INC.

Court of Common Pleas      Litchfield County      File No. 7879

MEMORANDUM FILED MAY 5, 1944.

*H. Roger Jones,* of Winsted, for the Plaintiff.

*Milton J. Nahum,* of Hartford, for the Defendant.

FITZGERALD, J. On the "pre-Pearl Harbor" date of April 10, 1941, plaintiff placed a written order with defend-ant for the purchase of a Pontiac sedan to be delivered to him "in 1942 or 1943." As part consideration for the purchase plaintiff on that day transferred to defendant title to a 1937 Plymouth subject to a lien of $219.50 in favor of a credit corporation. Allowance for the turned-in car was given plaintiff in the amount of $419.50 upon defendant's agreement to pay off the lien of $219.50, leaving a "total credit" allow-ance in plaintiff's favor of $200 towards the purchase of a

new car marketed by defendant. Shortly thereafter defendant paid the amount of the lien thus removing the encumbrance on title to the turned-in car. Certain matters in the nature of conditions printed on the back of the accepted order were incorporated in the order by reference. One paragraph thereof will be considered later.

Plaintiff at the time he signed the order was under engagement to go to Bermuda on government work and left a few days thereafter and did not return to this country until September, 1942, 17 months later. He went to defendant's place of business in Hartford and selected a new Pontiac which was listed at $1,211.39. Plaintiff personally was ready, able and willing to buy the car pursuant to the agreement of April 10, 1941, and defendant was willing that he should. However, the country had been at war since December 7, 1941, and in the early part of 1942 congressional legislation had resulted in the promulgation of a set of regulations rationing new passenger automobiles and prescribing the requirements thereunder. Defendant advised plaintiff of the mandatory procedure outlined in the regulations. To expedite matters, one of its officers accompanied plaintiff to the Rationing Board of Hartford County to assist him in his application for a certificate authorizing purchase of a new car. The application sought by plaintiff was rejected on the ground that he was ineligible.

Two additional subordinate facts bear recital: in June 1941, defendant had sold for $375 the car turned in by plaintiff; in April or May, 1943, plaintiff purported to cancel so much of his order of April 10, 1941, as related to a delivery of a new Pontiac car and requested the return of $200.

Plaintiff in this action sues to recover of defendant the $200 credit accorded him in his order April 10, 1941, with interest, and an additional sum of $100 for expenses he allegedly incurred as a result of defendant's nondelivery of the new car. So, also, defendant interposed a counterclaim claiming certain damages it has sustained. At the trial defendant withdrew its counterclaim and plaintiff in his offer of proof confined himself to the $200 credit as claimed damages.

Counsel agree that the Federal regulations which became effective subsequent to April 10, 1941, made impossible the performance of the obligations with respect to defendant's delivering a new car to plaintiff upon the latter's inability

to secure a certificate of authorization from the proper authorities. The "freezing order" of the Federal government, as applied to plaintiff, rendered the contractual obligations of the parties impossible of performance. See, generally, *Cinquegrano vs. T. A. Clarke Motors,* — R.I. —, 30 Atl. (2d) 859, *Anno.* 145 A. L. R. 1466, and cases and texts therein cited.

A paragraph contained on the back of the order of April 10, 1941, is determinative of the question of award. This paragraph is quoted with the sentences enumerated parenthetically for clarity: "(1) If you [defendant] are unable to deliver the car, or if I cancel this order as above permitted, the cash deposit shall be returned to me. (2) If for any reason this order is cancelled you [defendant] are to return to me any used car that I deposited with you in part payment, if still unsold by you, on payment by me of the actual expenses incurred by you in repairing, advertising and insuring it. (3) If you shall have already sold the used car you are not to be liable for nondelivery thereof, but shall pay me the amount you received therefor less all expense incurred in selling it and putting it in condition for sale, but the above provisions of the paragraph are subject to your right to retain or collect liquidated damages as above provided, and for which you shall have an enforceable lien on my used car."

Plaintiff rests his claim on the first sentence, arguing that the "cash deposit" is $200 to which he is entitled to recover. Defendant argues that the three sentences of the paragraph should be read together with emphasis on the third sentence in the light of the admitted facts of the case and the document as a whole.

It seems clear that plaintiff misconceives the meaning of the expression "cash deposit" contained in the first sentence. The face of the order specifies "Total Credit: $200.00", and in the light of its entire provisions is to be construed as the equivalent of "Total Cash Credit: $200.00." In short, plaintiff never made a "cash deposit" as such. See *Webster's New International Dictionary* (2d Ed.) for definitions of the nouns "credit" and "deposit" as used in the mercantile sense and in the realm of bookkeeping. But quite apart from all this the fact remains that the third sentence obviously deals with the situation presented — the turned-in car has already been sold by defendant; plaintiff without fault is unable to obtain a certificate authorizing his purchase of a new car and as a

result has cancelled any claim respecting delivery; and defend-ant, either because it wants to, or because the law and the writing in question gives plaintiff the right to cancel, acquiesces in the cancellation of what is left on paper of the earlier con-tractual obligations.

Defendant cites to the court the case of *Swift vs. Hale Pontiac Sales, Inc.* (Municipal Court of City of Syracuse), 34 N.Y.S. 888, as controlling on the question of an award. The subordinate facts in that case are almost identical with those in the case at bar. There the allowance made plaintiff on the turn-in of his old car was $700 and defendant agreed to pay off a lien thereon of $430.30, leaving a cash credit, or, as the court states, "a net balance", in plaintiff's favor of $269.70 towards a new car. In that case, as in this case, plaintiff thereafter ran into difficulties in obtaining a certificate to pur-chase and eventually had his application rejected. The court allowed plaintiff an award in the amount of the $269.70 credit; defendant was not permitted any deduction because it (p. 892) did "not [see] fit to introduce any evidence as to its expenses." In the case at bar defendant contends that unlike the defend-ant in the *Swift* case, it has offered satisfactory evidence on the latter aspect.

Before coming to a consideration of what items of expense defendant is entitled to have considered by way of deductions, the court feels obliged to make certain observations respecting the *Swift* case. Although the facts in that case are almost the same as in the case at bar, a reading of the opinion dis-closes that there was not before the court an interpretation of a paragraph of plaintiff's original order as here. Plaintiff therein sued to recover the sum of $269.70 ("cash credit" or "net balance") and defendant apparently defended on the sole ground that it was under no obligation to pay over this money and offered no evidence as to deductible expenses, if any. On this latter phase the two cases are not parallel.

In the case at bar defendant introduced evidence on ex-penses incurred as follows: cost of repairs to turned-in car, $13.40; lubricating, $2.47; advertising for sale, $8; commission on sale, $31.50; washing, polishing, gas, for delivery to buyer, $12; total of items, $67.37. The court allows defendant as deductions all of the foregoing items except the commission item of $31.50. This item is denied on the theory that the evidence indicates that the sale by defendant of the turned-in

car was proximately brought about by newspaper advertisements and not by independent and contributory efforts on the part of any salesman. Hence the allowed deductions on this phase are reduced to $35.87.

There now remains final computation of plaintiff's award. As stated previously, defendant sold the turned-in car in June, 1941, for $375. For all that appears the price received was reasonable under the circumstances and plaintiff has offered no evidence to the contrary. So, also, defendant paid off in the early stages the lien of $219.50 on the turned-in car. It strikes the court that this item is as much an "expense incurred" by defendant in selling the turned-in car as other items considered and allowed as deductions. This is on the theory that defendant could only unload the car on the second-hand market by removing encumbrances.

Plaintiff's award, therefore, is computed by subtracting the miscellaneous items totalling $35.87 and the further sum of $219.50 from $375 leaving the net amount of $119.63. No interest should be allowed thereon. See *Swift* case, p. 892.

The method of computation adopted by the court has been arrived at with considerable thought. It is predicated in the main upon the third sentence of the paragraph quoted from the back of the order of April 10, 1941, with due regard to the writing as a whole. In the last analysis it makes little difference how the $200 credit is characterized since it plays no part in the final computation. On the one hand, the award given plaintiff is less than his claim; on the other hand, it is more than defendant acknowledges is due.

The issues are found for plaintiff to the extent indicated. Judgment may be entered for plaintiff to recover of defendant damages in the amount of $119.63 with costs.